1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   THE GUARDIAN LIFE INSURANCE )   Case No. **CV 12-632-JFW (MANx)**
     COMPANY OF AMERICA,          )
12                                )
                   Plaintiff,     )   **FINDINGS OF FACT AND**
13         v.                     )   **CONCLUSIONS OF LAW**
                                  )
14   GABRIELIAN & ASSOCIATES,     )
                                  )
15                 Defendant.     )
     _____)
16                                )
     LEO GABRIELIAN; GABRIELIAN   )
17   AND ASSOCIATES INSURANCE     )
     SERVICES, INC.,              )
18                                )
             Counterclaimants,    )
19                                )
          v.                      )
20                                )
     THE GUARDIAN LIFE INSURANCE  )
21   COMPANY OF AMERICA,          )
                                  )
22             Counterdefendant.  )
                                  )
23   _____

24        With the agreement of the parties, the Court found this

25   matter appropriate for submission on the papers without oral

26   argument and vacated the Court Trial calendared for November

27   27, 2012.

28   / / /

1    After considering the administrative record, evidence,

2  and briefs filed by the parties, the Court makes the

3  following findings of fact and conclusions of law:

**Findings Of Fact**[1]

4

5  **I.   Introduction**

6    Plaintiff and counter-defendant The Guardian Life

7  Insurance Company of America ("Guardian") filed this

8  declaratory relief action seeking an order from this Court

9  confirming its rescission of the group disability insurance

10  policy issued by Guardian to "Gabrielian & Associates"

11  ("G&A") insuring G&A's employees.  Leo Gabrielian

12  ("Gabrielian") and Gabrielian and Associates Insurance

13  Services, Inc. filed a counterclaim seeking disability

14  benefits under the group policy.  This action is governed by

15  the Employee Retirement Income Security Act of 1974, 29

16  U.S.C. § 1001, *et seq.*

17  **II. Facts**

18    A.   The Application

19    On January 31, 2011, Gabrielian, as "CEO and President of

20  G&A," applied for a group disability insurance policy to be

21  issued by Guardian insuring G&A's employees. (AR 00006).

22  Gabrielian represented on the Application that G&A was a

23  corporation that employed two eligible employees who worked

24

25    [1] The Court has elected to issue its decision in
26  narrative form because a narrative format more fully explains
   the reasons supporting the Court's conclusions.  Any finding
27  of fact that constitutes a conclusion of law is hereby
   adopted as a conclusion of law, and any conclusion of law
28  that constitutes a finding of fact is hereby adopted as a
   finding of fact.

1  more than 30 hours per week, and that G&A sought insurance

2  for both of these employees. (AR 0005).  Gabrielian signed

3  the Application, and represented that he "reviewed the

4  statements made by [him] on this application, and they are

5  true and complete." (AR 00006).  He also acknowledged

6  that"[i]t is understood that no individual shall become

7  insured while not actively at work on a full-time basis, and

8  only full-time employees shall be eligible.  Full-time

9  employee means one who regularly works the number of hours in

10  the normal work week established by this planholder (*but not*

11  *less than 30 hours per week*) at his Planholder's place of

12  business."  (AR 00006).

13      In addition to the Application, G&A submitted "Evidence

14  of Insurability" for its two alleged "employees" - Gabrielian

15  and Melissa Alexanians.  (AR 00183-00187). G&A represented

16  that Melissa Alexanians was a full time employee of G&A as of

17  January 1, 2011. (AR 00183). The "Evidence of Insurability,"

18  submitted by G&A, stated that Alexanians was an insurance

19  agent, that her annual earnings were $100,000, and that she

20  had been actively working for G&A full time for full pay at

21  least 30 hours per week, year round.  (AR 00183).

22      B.   The Plan

23      Based on the information provided in the Application,

24  Guardian issued G&A the Group Policy with an Employer Rider

25  group plan number G-00761339-GN (the "Group Policy.").  (AR

26  00012).  The Group Policy was issued under the Trustees of

27  the Finance, Insurance, and Real Estate Industry Insurance

28  Trust Fund.  (AR 00012, 00026).  G&A became a participating

3

1  employer covered by the Group Policy effective February 1,

2  2011 (AR 00012, 00026).  The Group Policy identifies the

3  G&A's two covered employees as "President" and "Vice

4  President." (AR 00014).

5       The Group Policy states: "For purposes of this plan, we

6  will treat partners and proprietors like employees if they

7  meet this plan's conditions of eligibility." (AR 00014). The

8  Group Policy also states that it is governed by ERISA. (AR

9  00078-00079).

10      C.   Gabrielian's Claim for Disability Benefits

11      On March 18, 2011, according to Gabrielian's treating

12  physician, Gabrielian became totally disabled. Gabrielian

13  submitted his claim to Guardian on July 8, 2011. (AR 00464).

14      D.   Guardian's Rescission of the Group Policy

15      As part of Guardian's investigation of Gabrielian's claim

16  for disability benefits,[2] on January 4, 2012, Guardian's

17  investigator, Robert Grandolfo, interviewed Melissa

18  Alexanians, one of G&A's alleged "employees." (AR 00389).

19  Melissa Alexanians advised Mr. Grandolfo that, in or around

20  March 2011, she had considered going into business with

21  Gabrielian as a partner.  (AR 00389).  She advised Mr.

22  Grandolfo that she worked with Gabrielian on a part-time,

23  trial basis to become familiar with insurance sales. (AR

24  _____

25      [2]On October 10, 2011, Guardian denied Gabrielian's claim
    for short term disability benefits, on the grounds that
26  Gabrielian had not provided Guardian with information it had
    requested to support Gabrielian's disability claim. (AR
27  00559).  Gabrielian appealed Guardian's denial of benefits.
    (AR 00548). Guardian acknowledged receiving Gabrielian's
28  appeal and then continued to investigate Gabrielian's claim.
    (AR 00548).

00389). However, after about one month, she changed her mind about working and decided to be a "stay at home mom." (AR 00389). According to Alexanians, she never finalized any partnership arrangements with Gabrielian or entered into a written partnership agreement and never had a formal business relationship with Gabrielian or his insurance agency, G&A. She advised Mr. Grandolfo that she was never a paid employee of Gabrielian and never received any compensation from him. (AR 00389).

On January 6, 2012, Mr. Grandolfo sent a letter to Ms. Alexanians, confirming their January 4, 2012 conversation, and stating: "[I]f any of the information included in this letter is incorrect or needs clarification, please feel free to make corrections or additions directly to the letter. Please initial any changes and fax or e-mail the letter back to my attention." (AR 00897). Ms. Alexanians did not make any corrections or additions or otherwise respond to the letter. (AR 00715-00716).

Mr. Grandolfo spoke with Ms. Alexanians again on January 12, 2012, to confirm that she had received his January 6, 2012 letter, and to obtain additional information. (AR 00717). Specifically, Mr. Grandolfo explained to Ms. Alexanians that certain of the information that had been entered on her application for insurance was inconsistent with the information she had provided during their previous conversation. (AR 00717). For example, Mr. Grandolfo advised her that, in the application, the beginning date of her employment with Mr. Gabrielian was listed as January 1,

1  2011 and that her signature was dated January 31, 2011.   In

2  addition, in the application, her annual income was reported

3  as $100,000. (AR 00717).   Ms. Alexanians explained that she

4  could not remember the specific dates that she began working

5  with Mr. Gabrielian and that the income figure reported on

6  the application was for income that she had earned in years

7  prior to 2011.   (AR 00717).   However, she again confirmed

8  that she did not receive any income while working with Mr.

9  Gabrielian. (AR 00717).   On January 13, 2012, Mr. Grandolfo

10  sent another letter to Ms. Alexanians, confirming their

11  January 12, 2012 discussion.   (AR 00898).   Mr. Grandolfo

12  asked Ms. Alexanians to sign and return the letter via fax or

13  email.   Ms. Alexanians never responded. (AR 00717).

14       Guardian underwriter Conie Hoeft reviewed the

15  Application, and the information provided by Mr. Grandolfo,

16  and determined that Melissa Alexanians was not a full-time

17  employee of G&A.   With only one full-time employee, Ms. Hoeft

18  concluded that G&A would not have been eligible for the Group

19  Policy and that, as a result, Guardian would not have issued

20  the Group Policy.   (AR 00001).

21       Accordingly, in a letter dated January 20, 2012, Guardian

22  notified Mr. Gabrielian that it was rescinding the Group

23  Policy issued to G&A, and refunded the premium paid by G&A.

24  (AR 00215-00222).   In that letter, Guardian advised

25  Gabrielian that: "In addition, even if the coverage was not

26  rescinded (which by this letter it is), you would still have

27  not established that you are entitled to benefits for Short

28  Term Disability." (AR 00217).

1    Although the January 20, 2012 letter advised Gabrielian

2  that he had the right to appeal Guardian's decision and

3  submit additional information, Guardian filed this

4  declaratory relief action on January 24, 2012, before Mr.

5  Gabrielian could appeal Guardian's decision. (AR 00219).

6         E.    Mr. Gabrielian's position with respect to Ms.

7               Alexanians' employment

8    Mr. Gabrielian submitted a declaration in addition to his

9  Opening Trial Brief in this action, which states that, in

10 early 2011, he intended to enter into a partnership named

11 "Gabrielian & Associates" with Alexanians to sell insurance

12 under his existing corporation "Gabrielian and Associates

13 Insurance Services, Inc."  Gabrielian Declaration at ¶ 3.

14 Mr. Gabrielian states that he took the initial steps to

15 create or establish the partnership "Gabrielian &

16 Associates," including meeting with an attorney on the

17 subject, but the required documents were never prepared.

18 Gabrielian Declaration at ¶ 3.  Although the documents to

19 create or establish the partnership were never prepared,

20 Gabrielian states that "Alexanians and I began working

21 together in February 2011, both working in excess of 30 hours

22 per week as far as I was aware.  We worked together on

23 numerous deals, sharing a large number of emails, documenting

24 the work that we were doing together, submitting applications

25 for insurance and distributing the commissions between

26 ourselves."  Gabrielian Declaration at ¶ 11.  Gabrielian

27 considered Alexanians his partner, even though no partnership

28 agreement was ever executed.  Gabrielian Declaration at ¶¶

1  12, 14. Mr. Gabrielian admits that in May 2011, Alexanians

2  advised Gabrielian that she no longer wished to work.

3  Gabrielian Declaration at Exhibit D.

4                      **Conclusions Of Law**

5  **I.   Jurisdiction And Venue**

6       This action involves the rescission of an employee

7  welfare benefit plan regulated by ERISA.  As such, the Court

8  has original jurisdiction over this matter under 28 U.S.C. §

9  1331 and 29 U.S.C. § 1132(e).  Venue in the United States

10 District Court for the Central District of California is

11 invoked pursuant to 29 U.S.C. § 1132(e)(2).

12       The parties do not dispute the facts requisite to federal

13 jurisdiction and venue.

14 **II.  Standard Of Review**

15       Generally, where the plan grants discretionary authority

16 to the administrator or fiduciary to determine eligibility

17 for benefits or to construe the terms of the plan, the Court

18 reviews the decision to rescind the plan for an abuse of

19 discretion. *See Shipley v. Arkansas Blue Cross and Blue*

20 *Shield*, 333 F.3d 898 (8th Cir. 2003) (applying the abuse of

21 discretion standard to insurer's decision to rescind the plan

22 because plan granted discretion to interpret the terms of the

23 plan, including the enrollment form).  However, even where a

24 plan grants such discretion to the administrator or

25 fiduciary, the Court will review the insurer's decision to

26 rescind the plan de novo when the administrator or fiduciary

27 fails to exercise that discretion or engages in "wholesale

28 and flagrant violations" of the procedural requirements of

1  ERISA.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d

2  955,971-72 (9th Cir. 2006).

3      In this case, both parties agree that the Group Policy

4  grants discretion to Guardian to determine eligibility for

5  benefits and to construe the terms of the plan with respect

6  to claims. (AR 00047; 00705). However, each party has taken

7  conflicting positions regarding whether the Court should

8  review Guardian's decision to rescind the Group Policy de

9  novo or for abuse of discretion.  In its Opening Brief,

10 Guardian argued that the Court should review its rescission

11 decision de novo.  Then, in its Opposition, Guardian argued

12 that the Court should review its rescission decision for

13 abuse of discretion.  In contrast, in their Opening Brief,

14 G&A and Gabrielian argued that the Court should review

15 Guardian's rescission decision for abuse of discretion.

16 Then, in their Opposition, G&A and Gabrielian argued that the

17 Court should review Guardian's rescission decision de novo.

18      In light of the fact that Guardian filed this action

19 before Gabrielian or G&A could appeal Guardian's decision to

20 rescind the Group Policy, the Court will apply the de novo

21 standard of review. *See, e.g. Kowalski v. Farella, Braun &*

22 *Martel, LLP*, 2007 WL 2123324, at *2 (N.D. Cal. July 23, 2007)

23 (reviewing defendants' termination of plaintiff's disability

24 benefits de novo where defendants never ruled on plaintiff's

25 appeal); *Vaught v. Scottsdale Healthcare Corporation Health*

26 *Plan*, 2009 WL 649806, at *2 (D. Ariz. Mar. 10, 2009) (finding

27 de novo review appropriate where Plan failed to exercise its

28 discretionary authority by failing to act on claimant's

1  appeal).  Accordingly, the Court gives no deference at all to

2  Guardian's decision to rescind the Group Policy.

3       Moreover, because Gabrielian did not have an opportunity

4  to appeal the decision before Guardian filed this action, he

5  also did not have an opportunity to present evidence in

6  opposition to Guardian's conclusion that Alexanians was not a

7  full-time employee of G&A. The Court may exercise its

8  discretion to allow evidence that was not before the plan

9  administrator "when circumstances clearly establish that

10 additional evidence is necessary to conduct an adequate *de*

11 *novo* review of the benefit decision."  *Mogeluzo v. Baxter*

12 *Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944

13 (1995) (quoting *Quesinberry v. Life Ins. Co. of North*

14 *America*, 987 F.2d 107, 1025 (4th Cir. 1993) (en banc)).

15 Because Gabrielian did not have the opportunity to present

16 evidence in opposition to Guardian's decision to rescind the

17 Group Policy, the Court will consider the extrinsic evidence

18 submitted by Gabrielian and G&A with respect to Alexanians'

19 employment.  *See Quesinberry*, 987 F.2d at 1027 (noting that

20 exceptional circumstances that may warrant an exercise of the

21 court's discretion to allow additional evidence include

22 "circumstances in which there is additional evidence that the

23 claimant could not have presented in the administrative

24 process.").

25      In light of the Court's decision to review Guardian's

26 rescission of the Group Policy de novo, the parties agree

27 that Guardian must prove, by a preponderance of the evidence,

28 that its decision to rescind the Group Policy was correct.

**III. Discussion**

Based on its review of the administrative record and the extrinsic evidence, the Court concludes that Guardian was entitled to rescind the Group Policy.

Under ERISA, an insurer may rescind an insurance contract when it is entered into on the basis of a fraudulent or material misrepresentation. *See Security Life Ins. Co. Of America v. Meyling*, 146 F.3d 1184, 1191 (9th Cir. 1998). "[T]o establish materiality in the insurance context, the misstatements must have either affected insurability *or* the amount of premium paid by the insured. In essence, materiality is determined by the misrepresentation's effect on the insurer's informed acceptance of risk, i.e., would knowledge of the true facts have influenced the insurer in deciding whether to accept the risk or in assessing how much premium should be paid for undertaking the risk." *Id.* at 1192 (emphasis added). Contrary to Gabrielian and G&A's argument, Guardian is not required to establish that the misrepresentation caused it financial harm.

In this case, the Court concludes that Gabrielian misrepresented the status of Alexanians' employment on the insurance application. Specifically, Gabrielian represented that Alexanians was a full-time employee of a corporation. However, the Court finds that Alexanians was not a full-time employee of a corporation, and at most was associated with Mr. Gabrielian in selling insurance under the name of Gabrielian & Associates. Indeed, based on Gabrielian's own admission in his declaration, G&A was the proposed name of a

1  partnership to be formed between Gabrielian and Alexanians in

2  the future and the documents to create or establish the

3  partnership were never prepared.  While it is true that

4  Gabrielian and Alexanians worked together as insurance

5  brokers, submitting applications for insurance and splitting

6  commissions between themselves and other insurance agents, as

7  Alexanians stated to Guardian's investigator, she never

8  entered into any partnership with Gabrielian and never even

9  had a formal business relationship with Gabrielian or G&A.

10       The Court concludes that Gabrielian's misrepresentation

11 regarding Alexanians' employment status was material, in that

12 it would have influenced Guardian in deciding whether to

13 enter into the insurance contract.  Had Guardian known of the

14 true facts, it would not, and in fact, could not, have issued

15 the Group Policy, governed by ERISA, to G&A.  In order to

16 qualify as an "employee benefit plan" under ERISA, the plan

17 must cover at least one employee.  *See Peterson v. American*

18 *Life Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1995) ("The

19 regulations implementing this section provide that a plan

20 'under which no employees are participants' does not

21 constitute an ERISA benefit plan.").  Because the Court finds

22 that Alexanians was not an employee of G&A and was at most

23 associated with G&A in selling insurance, Guardian could not

24 have issued the Group Policy governed by ERISA to G&A.

25 Moreover, even assuming that both Gabrielian and Alexanians

26 were somehow partners doing business under the name of G&A as

27 Gabrielian contends, Guardian still could not have issued the

28 Group Policy governed by ERISA to G&A.  "Neither an owner of

1  a business nor a partner in a partnership can constitute an

2  'employee' for purposes of determining the existence of an

3  ERISA plan."[3]  *Id.*  Accordingly, the Court finds by a

4  preponderance of the evidence that Gabrielian made a material

5  misrepresentation in G&A's Application for insurance, and

6  that Guardian was entitled to rescind G&A's Group Policy.

7  **IV.  Conclusion**

8       For all of the foregoing reasons, the Court finds that

9  Guardian correctly rescinded G&A's Group Policy, and thus

10 that Gabrielian is not entitled to any disability benefits.

11      Counsel shall meet and confer and prepare a joint

12 proposed Judgment consistent with these Findings of Fact and

13 Conclusions of Law.  The joint proposed Judgment shall be

14 lodged with the Court on or before **January 7, 2013.**  In the

15 unlikely event that counsel are unable to agree upon a joint

16 proposed Judgment, the parties shall each submit separate

17 versions of a proposed Judgment along with a declaration

18 outlining their objections to the opposing party's version on

19 or before **January 7, 2013.**

20

21 Dated:    December 19, 2012

                                JOHN F. WALTER
22                              UNITED STATES DISTRICT JUDGE

23

24 _____

25      [3] As Gabrielian points out, the Group Policy states: "For purposes of this plan, we will treat partners and proprietors

26 like employees if they meet this plan's conditions of eligibility." However, this provision does not affect the

27 materiality of the misrepresentation in G&A's application for insurance.  As long as the partners employ at least one

28 employee, Guardian could have issued the Group Policy and the partners would be treated like employees for the purposes of coverage under the Group Policy.